Opinion for the court filed by Circuit Judge REYNA.
Dissenting opinion filed by Circuit Judge DYK.
Dissenting opinion filed by Circuit Judge O’MALLEY, with whom PROST, Chief Judge, LOURIE and DYK, Circuit Judges, join.
REYNA, Circuit Judge.
Section 337 of the Tariff Act of 1930, codified at 19 U.S.C. § 1337 (“Section 337”), declares certain acts unlawful. Among them is importing “articles that ... infringe a valid and enforceable United States patent.” 19 U.S.C. § 1337(a)(l)(B)(i). The International Trade Commission (“Commission”) interpreted this provision to cover importation of goods that, after importation, are used by the importer to directly infringe at the inducement of the goods’ seller. A majority panel of this court disagreed, reasoning that there are no “articles that infringe” at the time of importation when direct infringement does not occur until after importation. Suprema, Inc. v. Int’l Trade Comm’n, 742 F.3d 1350, 1352 (Fed.Cir.2013). In doing so, the panel effectively eliminated trade relief under Section 337 for induced infringement and potentially for all types of infringement of method claims.
We granted en banc rehearing and vacated the panel decision, 2014 WL 3036241, and we now uphold the Commission’s position. We conclude that because Section 337 does not answer the question before us, the Commission’s interpretation of Section 337 is entitled to Chevron deference. We hold that the Commission’s interpreta *1341 tion is reasonable because it is consistent with Section 337 and Congress’ mandate to the Commission to safeguard United States commercial interests at the border. Accordingly, we return the case to the panel for further proceedings consistent with this opinion.
I. BackgRound
This case comes before us on appeal from a final determination by the Commission, finding a violation of Section 337 by Suprema, Inc., and Mentalix, Inc., in Certain Biometric Scanning Devices, Components Thereof, Associated Software, and Products Containing the Same, Inv. No. 337-TA-720. Section 337 authorizes the Commission to investigate allegations of unfair trade acts in the importation of articles that infringe a valid United States patent. 19 U.S.C. § 1337(b)(1). If a violation of the statute is found, the Commission issues an exclusion order that bars the importation of some or all of the infringing products and may issue a related cease and desist order unless the Commission finds that certain public interest factors militate against such remedy. Id. § 1337(d).
In May 2010, Cross Match Technologies, Inc. (“Cross Match”) filed a complaint with the Commission, alleging infringement of four patents owned by Cross Match involving certain fingerprint scanning devices. The Commission found the scanners to be manufactured by Suprema abroad, and imported into the United States by both Suprema and Mentalix. Mentalix subsequently combined the scanners with software, and used and sold the scanners in the United States.
Cross Match is the assignee of several patents covering technology used in biometric imaging scanners including U.S. Patent Nos. 7,203,344 (“the '344 patent”), the only patent relevant to this appeal. The claims of the '344 patent are drawn to fingerprint scanning systems and methods that generate a fingerprint image, process that image to identify key regions, and determine image quality. Claim 19, the sole claim remaining in this appeal, recites:
19. A method for capturing and processing a fingerprint image, the method comprising:
(a) scanning one or more fingers;
(b) capturing data representing a corresponding fingerprint image;
(c) filtering the fingerprint image;
(d) binarizing the filtered fingerprint image;
(e) detecting a fingerprint area based on a concentration of black pixels in the binarized fingerprint image;
(f) detecting a fingerprint shape based on an arrangement of the concentrated black pixels in an oval-like shape in the binarized fingerprint image; and
(g) determining whether the detected fingerprint area and shape are of an acceptable quality.
'344 patent col. 19 11. 24-37.
Suprema, Inc., is a Korean company that makes hardware for scanning fingerprints, including its RealScan line of fingerprint scanners. Suprema sells the scanners to Mentalix, Inc.[1] The scanners are not standalone products. To function, they must *1342 be connected to a computer, and that computer must have custom-developed software installed and running. Suprema does not make or sell this software. Instead, it ships each scanner with a “software development kit” (“SDK”) that is used for developing custom programs that control the functions of its scanners. The SDK comes with an instruction manual that explains how programs can be written to take advantage of scanner functionality.
Mentalix, Inc., is an American company that purchases Suprema’s scanners and imports those scanners into the United States. It writes custom software, called FedSubmit, which uses Suprema’s SDK to control and operate the scanners. Menta-lix then bundles its software with the scanners and resells the bundle within the United States.
The Commission instituted an investigation of Suprema’s accused scanners in June 2010 pursuant to 19 U.S.C. § 1337(a)(l)(B)(i). 75 Fed.Reg. 34482-83 (June 17, 2010). Section 337(a)(l)(B)(i) declares unlawful the importation, sale for importation, or sale within the United States after importation of articles that infringe a valid and enforceable United States patent. An administrative law judge (“ALJ”) construed certain terms of claim 19 of the '344 patent and then conducted a thorough infringement analysis, expressly finding that each of the limitations of claim 19 was practiced by the accused products. See J.A. 123-32. On the basis of that finding, the ALJ determined that several Suprema scanners, the RealScan-10, RealScan-D, RealScan-10F, and RealScan-DF, directly infringe claim 19 of the '344 patent when used with the SDK kits and Mentalix’s FedSubmit software. J.A. 133.
Based on the finding that the '344 patent was infringed, the ALJ issued a Final Initial Determination that there had been “a violation of section 337 in the importation into the United States, sale for importation, and sale within the United States after importation of certain biometric scanning devices” and “associated software.” J.A. 205. The ALJ recommended, that a limited exclusion order issue that would bar Suprema’s infringing scanners from entering the United States.[2] Id. The ALJ further recommended that a cease-and-desist order issue to prevent Mentalix from distributing the infringing scanners. Id.
In June 2011, the Commission determined to review the ALJ’s Final Initial Determination of infringement of claim 19 of the '344 patent. J.A. 209. The Commission requested briefing on the issues under review, and “requested written submissions on the issues of remedy, the public interest, and bonding from the parties and interested non-parties.” J.A. 210 (citing 76 Fed.Reg. 52970-71 (Aug. 24, 2011)). In addition to considering the issue of direct infringement, the Commission also considered whether Suprema induced infringement of claim 19. The Commission’s comprehensive analysis included a survey of the relevant law, a summary the ALJ’s decision, and an extensive discussion of the parties’ arguments.
Regarding direct infringement, the Commission found that record evidence demonstrated that Mentalix had already *1343 directly infringed claim 19 within the United States prior to the initiation of the investigation. Mentalix’s direct infringement arose from its integration of FedSub-mit software with Suprema scanners and SDK kits, and subsequent use of the combination within the United States. J.A. 220.
Turning to the issue of indirect infringement, the Commission examined the elements required to support an inducement finding, in addition to underlying direct infringement. In particular, the Commission considered the inducer’s knowledge regarding patent infringement. The Commission explained that the knowledge prong is met by a showing of willful blindness. J.A. 221 (citing Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 131 S.Ct. 2060, 2070-71, 179 L.Ed.2d 1167 (2011)). The Commission laid out the requirements for willful blindness: (1) the defendant’s subjective belief in the high probability that a fact exists; and (2) the defendant’s taking of deliberate steps to avoid learning of that fact. Id. (citing Global-Tech, 131 S.Ct. at 2070).
The Commission found that Suprema “ ‘willfully blinded’ itself to the infringing nature of Mentalix’s activities,” which Suprema “had actively encouraged.” J.A. 221. Though much of the relevant evidence is confidential and cannot be repeated here, the Commission found that Suprema believed in high probability that its scanners would infringe the '344 patent. For instance, the Commission found that Suprema was successful in its attempts to develop various functions covered by the '344 patent into its products. J.A. 222. Based on these factual findings, the Commission found that Suprema subjectively believed in the high probability that Cross Match’s scanner technology was patented and, therefore, that it was likely that Suprema’s scanner products would be covered by Cross Match’s patents. J.A. 224.
The Commission also found that Supre-ma deliberately avoided acquiring knowledge of the '344 patent.[3] Among other things, the Commission found that Supre-ma failed to obtain opinion of counsel, through which the '344 patent would have been uncovered since it was owned by Cross Match, and the search would have included an analysis of whether Suprema infringed Cross Match patents. J.A. 224. Accordingly, the Commission found that Suprema had willfully blinded itself to the existence of the '344 patent and “deliberately shielded itself from the nature of the infringing activities it actively encouraged and facilitated Mentalix to make.” J.A. 225.
As to the active encouragement and facilitation requirement, the Commission listed numerous confidential examples of the collaborative efforts of Suprema and Mentalix, noting the list was not exhaustive. J.A. 225. Based on this extensive evidence, the Commission found that Suprema aided and abetted Mentalix’s infringement by collaborating “with Mentalix to import the scanners and to help adapt Mentalix’s FedSubmit software to work with Suprema’s imported scanners and SDK to practice claim 19 of the '344 patent.” J.A. 225. Thus, the Commission found that all the elements of induced infringement had been met. The Commission modified the ALJ’s initial determination such that Mentalix was found to directly infringe claim 19 of the '344 patent, establishing the underlying direct infringement, and Suprema was found to induce infringement of claim 19. J.A. 233.
Upon determining Section 337 was violated, the Commission considered the ap *1344 propriate enforcement action. It agreed with the ALJ that the appropriate relief included a limited exclusion order covering infringing scanners, associated software, and products containing the same that were manufactured overseas by or imported by or on behalf of Suprema or Mentalix, or any entity affiliated with either company. J.A. 235. Thereupon, the Commission issued the limited exclusion order and terminated the investigation.
Suprema and Mentalix appealed several of the Commission’s findings to this court, including the findings of direct and indirect infringement of claim 19 of the '344 patent. They further requested that the Commission’s limited exclusion order be vacated.
A divided panel of this court vacated the Commission’s findings that Mentalix directly infringed the '344 patent and that Suprema induced infringement of the '344 patent. Suprema, Inc. v. Int’l Trade Comm’n, 742 F.3d 1350 (Fed.Cir.2013). The majority reasoned that Section 337’s ' language, “articles that infringe,” is a temporal requirement and that infringement must be measured at the time of importation. Id. at 1363. It concluded that the Commission lacks authority under Section 337 to issue an exclusion order predicated on induced infringement because such imports are not in an infringing state upon importation. Id. at 1357. Thus, the majority vacated all of the Commission’s infringement findings as to the '344 patent and the limited exclusion order based on those findings. Id.
Cross Match and the Commission petitioned for rehearing en banc. We granted the petition to consider whether the Commission correctly concluded that unfair trade acts covered by Section 337 include the importation of articles used to infringe by'the importer at the inducement of the articles’ seller. The United States Department of Justice and numerous Amici filed briefs. Oral arguments were heard on February 5, 2015.
II. Discussion
United States trade laws have long afforded trade relief to domestic industries from a range of unfair trade practices. The commercial effect of international trade acts and practices has been a major congressional concern since the founding of our nation. In the second Act passed by the first United States Congress, the Tariff Act of 1789, Congress found that the imposition of duties on imports was “necessary for ... the encouragement and protection of manufactures.” Act of July 4, 1789, ch. 2, § 1,1 Stat. 24, 24. Since 1789, Congress has been vigilant both to encourage and protect U.S. domestic interests in connection with unfair commercial activity involving foreign imports, a vigilance that in 1922 led to the passage of Section 316, the predecessor of Section 337. See Tariff Act of 1922, ch. 356, § 316(a), Pub.L. No. 67-318, 42 Stat. 858 (1922). Section 316 declared unlawful “unfair methods of competition and unfair acts in the importation of articles into the United States.” Id. at 943.
Section 337, the modern statutory section, is codified at 19 U.S.C. § 1337. As a trade statute, the purpose of Section 337 is to regulate international commerce. Id. at 858 (explaining purpose of Act enacting precursor to Section 337 was “to regulate commerce with foreign countries”); Pub.L. No. 71-361, 46 Stat. 590, 590 (1930) (same). Section 337 necessarily focuses on commercial activity related to cross-border movement of goods. See, e.g., 19 U.S.C. §§ 1337(a)(1)(B) (imported goods infring *1345 ing patents or copyrights), (a)(1)(C) (imported goods infringing a trademark), (a)(1)(D) (imported goods infringing a mask work), (a)(1)(E) (imported goods infringing design rights). While Congress has addressed domestic commercial practices under various statutory regimes, such as antitrust (15 U.S.C. §§ 1-38), patent (35 U.S.C. §§ 1-390), and copyright (19 U.S.C. §§ 1-1332), it has established a distinct legal regime in Section 337 aimed at curbing unfair trade practices that involve the entry of goods into the U.S. market via importation. In sum, Section 337 is an enforcement statute enacted by Congress to stop at the border the entry of goods, i.e., articles, that are involved in unfair trade practices.
Section 337 declares certain activities related to importation to be unlawful trade acts and directs the Commission generally to grant prospective relief if it has found an unlawful trade act to have occurred. Subsection (a) identifies several types of acts as unlawful, one of which relates to infringement of a U.S. patent. Specifically, the statute provides:
(a)(1) ... [T]he following are unlawful, and when found by the Commission to exist shall be dealt with ... as provided in this section:
(B) The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that — ■
(i) infringe a valid and enforceable United States patent or a valid and enforceable United States copyright registered under title 17
§ 1337(a)(1)(B)© (emphases added). Section 337 directs the Commission to “investigate any alleged violation of this section on complaint,” including allegations of importing articles that infringe. • Id. § 1337(b)(1). After concluding the investigation, the Commission is required to “determine ... whether or not there is a violation of this section.” Id. § 1337(c). If it finds a violation under subsection (a), subsection (d) obligates the Commission to fashion prospective relief, typically involving the Commission directing that certain articles be excluded from entry into the U.S., “unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry.” Id. § 1337(d)(1). Under the statutory provisions at issue, proof of quantifiable harm is not an element of liability, and monetary damages are not available as relief.
We are asked to decide whether goods qualify as “articles that infringe” when the Commission has found that such goods were used, after importation, to directly infringe by the importer at the inducement of the goods’ seller. In other words, does the importation of such goods qualify as an unfair trade act under Section 337? If the answer is yes, the Commission has authority under § 1337(d)(1) to issue an exclusion order to prevent this act from occurring in the future.
We begin with our standard of review, and what deference, if any, is owed to the Commission’s interpretation of Section 337. There is no dispute that Congress has delegated authority to the Commission to resolve ambiguity in Section 337 if the Commission does so through formal adjudicative procedures. See United States v. *1346 Mead Corp., 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); Kinik Co. v. Int’l Trade Comm’n, 362 F.3d 1359, 1363 (Fed.Cir.2004) (“To the extent that there is any uncertainty or ambiguity in the interpretation of ... § 1337(a)(l)(B)(ii), deference must be given to the view of the agency that is charged with its administration.”); Enercon GmbH v. Int’l Trade Comm’n, 151 F.3d 1376, 1381-83 (Fed.Cir.1998). The Commission’s investigations under Section 337 require “adequate notice, cross-examination, presentation of evidence, objection, motion, argument, and all other rights essential to a fair hearing,” 19 C.F.R. § 210.36(d), thus satisfying Mead’s formality requirement. Accordingly, we review the Commission’s interpretation pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
The Chevron framework is well-established. City of Arlington, Tex. v. FCC, — U.S. -, 133 S.Ct. 1863, 1868, — L.Ed.2d-(2013) (explaining Chevron’s “now-canonical formulation”). Chevron requires a court reviewing an agency’s construction of a statute which it administers to answer two questions. Chevron, 467 U.S. at 842, 104 S.Ct. 2778. The first is “whether Congress has directly spoken to the precise question at issue.” Id. If the answer is yes, then the inquiry ends, and we must give effect to Congress’ unambiguous intent. Id. at 842-43, 104 S.Ct. 2778. If the answer is no, the second question is “whether the agency’s answer [to the precise question at issue] is based on a permissible construction of the statute.” Id. at 843, 104 S.Ct. 2778. The agency’s “interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.” United States v. Eurodif S.A., 555 U.S. 305, 316, 129 S.Ct. 878, 172 L.Ed.2d 679 (2009) (citing Mead, 533 U.S. at 229-30, 121 S.Ct. 2164).
A. Chevron Step One
Chevron’s framework begins with the language of the statute. DIRECTV Grp., Inc. v. United States, 670 F.3d 1370, 1381 (Fed.Cir.2012). As explained below, the shorthand phrase “articles that infringe” does not unambiguously exclude inducement of post-importation infringement.
By using the word “infringe,” Section 337 refers to 35 U.S.C. § 271, the statutory provision defining patent infringement. The word “infringe” does not narrow Section 337’s scope to any particular subsections of § 271. As reflected in § 271 and the case law from before and after 1952, “infringement” is a term that encompasses both direct and indirect infringement, including infringement by importation that induces direct infringement of a method claim'. See 35 U.S.C. § 281 (remedy for infringement); Crystal Semiconductor Corp. v. TriTech Microelectronics Int’l, Inc., 246 F.3d 1336 (Fed.Cir.2001).
Section 337 refers not just to infringement, but to “articles that infringe.” That phrase does not narrow the provision to exclude inducement of post-importation infringement. Rather, the phrase introduces textual uncertainty. Simply put, the phrase “articles that infringe” does not map onto the Patent Act’s definition of infringement. In its amicus brief to us, the United States describes the disparity as one arising from the in rem language of Section 337 and the in personam language of § 271. See U.S. Amicus Br. 10-14.
*1347 The relevant portions of § 271 define persons’ actions as infringement. See, e.g., 35 U.S.C. § 271(a) (“[WJhoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent.”); § 271(b) (“Whoever actively induces infringement of a patent shall be liable as an infringer.”); § 271(c) (“Whoever offers to sell or sells ... a component of a patented machine ... shall be liable as an infringer.”). An “article” cannot infringe under any subsection of § 271. The disparity between the language of Section 337 and the Patent Act’s definitions of infringement presents uncertainty requiring resolution by the agency charged with Section 337’s enforcement. Congress has not provided an unambiguous resolution, much less one that excludes the inducement at issue here.
Suprema argues that, because Section 337 refers to articles, the only bases for infringement under Section 337 come from 35 U.S.C. §§ 271(a) and (c), which refer to “any patented invention” and “a component” of a patented machine, respectively. Appellant’s Br. at 30-31. Suprema’s argument fails to recognize that inducement, like contributory infringement, is commonly based on the provision of articles. See Commit USA, LLC v. Cisco Sys., Inc., — U.S.-, 135 S.Ct. 1920, 191 L.Ed.2d 883 (2015); Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011). Still, we need not decide whether Suprema’s interpretation might be a reasonable resolution of the textual dilemma presented by mapping Section 337 onto § 271. We cannot find that Congress prescribed Suprema’s view, and hence we cannot adopt such an interpretation at Chevron Step One. Under §§ 271(a) and (c), it is not articles that infringe, but actions that infringe.
Moreover, Suprema has not shown that the phrase “articles that infringe” has a clearly established usage limited to product claims or to direct or contributory infringement, much less a usage that excludes induced infringement of a method claim. To the contrary, various forms of shorthand references to devices that infringe have often been used without such narrowed meaning.[4] We therefore cannot conclude that Congress, in using the Section 337 phrase, did so with an unambiguous meaning for how it applies to § 271.
Citing the present-tense use of the verb “infringe” in the phrase “articles that infringe,” the panel suggested that Section 337 must exclude inducement of post-importation infringement because the acts that complete infringement have not all taken place at the time of importation. Suprema, 742 F.3d at 1358. It is true that the direct infringement required for inducement, see Limelight Networks, Inc. v. Akamai Techs., Inc., — U.S. -, 134 S.Ct. 2111, 2117 & n. 3, 189 L.Ed.2d 52 (2014), will typically not have taken place *1348 at the time of the importation that induces it. Yet we cannot conclude that Congress unambiguously excluded such induced infringement on the basis of the panel’s reasoning.
For contributory infringement, as for • inducement, direct infringement is necessary and will typically take place later than the accused indirect infringer’s act. See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961). The panel recognized that Section 337 could fairly reach contributory infringement. See, e.g., Suprema, 742 F.3d at 1361, n. 4. As that recognition confirms, Section 337’s present-tense language is readily susceptible to being read as satisfied by the indirect infringer’s own acts, including importation that is part of inducement or contribution. See National Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1194-96 (Fed.Cir.1996) (inducing act must occur after patent issues to support inducement liability; not enough that induced act occurs after issuance); Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd., 754 F.2d 345, 348 (Fed.Cir.1985) (“[Liability [arises] as of the time the [inducing] acts were committed, not at some future date determined by the acts of others.”) (emphasis omitted).
Reading the statute unambiguously to require that infringement occur at the time of importation would have produced absurd results under the pre-1994 version of § 271(a). Such a reading would mean that Congress, when it enacted the language at issue in 1988, excluded even the ordinary case of direct infringement. At that time (before 1994), § 271(a) did not define importing a patented invention (or the offer to sell a patented invention) an infringing act. Section 271(a) only covered making, using, and selling, and those actions had to occur in the United States. 35 U.S.C. § 271(a) (1988). At least for ordinary importations involving goods that enter the United States for a later use or sale, none of the activities encompassed by the former § 271(a) would have occurred in the United States at the time of importation. If Congress meant to forbid the Commission from looking past the time of importation in defining Section 337’s reach, Section 337 would not have reached even garden-variety direct infringement. Even if Section 337(a)(l)(B)’s clause covering post-importation sales allowed assessment of infringement after importation, Section 337 would not have covered the ordinary case of post-importation use without post-importation sales. We cannot attribute that result to Congress.
The panel also reasoned that Section 337’s remedial provision allowing for an exclusion order demonstrates that Section 337’s “focus is on the' infringing nature of the articles at the time of importation.” Suprema, 742 F.3d at 1358-59 (emphasis added). Section 337 refers to the Commission’s authority to issue an exclusion order against “the articles concerned.” Id. at 1359 (quoting Section 337(d)(1)). The panel asserted that the “articles concerned” “would be, of course, the aforementioned ‘articles that ... infringe a valid and enforceable United States patent.” Id. (quoting Section 337(a)(1)(B)©). The panel thus interpreted Section 337 subsections (d)(1) and (a)(1)(B)® as referring to the same “articles.”
The panel’s reasoning evidences a misunderstanding of enforcement statutes like Section 337. The “articles” of subsections (a) and (d)(1) are not the same. Subsection (a) defines unfair trade acts. When the Commission determines that one of these unfair trade acts has occurred, it *1349 provides injunctive relief to prevent future unfair trade acts according to subsection (d)(1). An exclusion order issued under subsection (d)(1) does not affect the articles that gave rise to the unfair trade act, e.g., the “articles that infringe.” Those articles have already been imported, and thus cannot be excluded from entry into the U.S. Rather, like all forms of injunctive relief, an exclusion order prevents future illegal acts from occurring by, for example, preventing similar articles from entering the U.S.
Accordingly, we hold that Congress has not directly answered whether goods qualify as “articles that infringe” when the Commission has found that an importer used such goods, after importation, to directly infringe at the inducement of the goods’ seller.
B. Chevron Step Two
Because Section 337 does not answer the precise question before us, we consider whether the Commission’s interpretation of Section 337 is reasonable. The Commission’s interpretation “prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best.” Holder v. Martinez Gutierrez, - U.S. -, 132 S.Ct. 2011, 2017, 182 L.Ed.2d 922 (2012). For the reasons explained below, we find the Commission’s interpretation consistent with the statutory text, policy, and legislative history of Section 337. We thus find the Commission’s interpretation reasonable.
1. Statutory Text
The Commission’s interpretation is consistent with the statutory text, for reasons we have already suggested. Induced infringement is one kind of infringement, and when it is accomplished by supplying an article, the article supplied can be an “article that infringes” if the other requirements of inducement are met. Liability for inducement must be predicated on a finding of direct infringement. Limelight, 134 S.Ct. at 2117. Yet direct infringement commonly occurs after inducement. Liability for inducement nevertheless attaches as of the time of the inducing activity, provided that direct infringement eventually occurs. Standard Oil, 754 F.2d at 348. The Commission’s interpretation recognizes that the acts necessary for induced infringement, including acts of direct infringement, may not occur simultaneously at the time of importation. In many cases, such acts cannot occur at the time of importation. In that context, the Commission’s interpretation that Section 337 grants it authority to prevent importation of articles that have been part of inducement as an unfair trade act is consistent with the statutory phrase “articles that infringe.”
The Commission’s interpretation is also consistent with the text of Section 337 as a whole. See Holder, 132 S.Ct. at 2017 (finding an agency’s interpretation consistent with statute’s text, and thus reasonable). Section 337 contemplates that infringement may occur after importation. The statute defines as unlawful “the sale within the United States after importation ... of articles that — (i) infringe-” § 337(a)(1)(B)®. The statute thus distinguishes the unfair trade act of importation from infringement by defining as unfair the importation of an article that will infringe, i.e., be sold, “after importation.” Id. Section 337(a)(l)(B)’s “sale ... after importation” language confirms that the Commission is permitted to focus on post-importation activity to identify the completion of infringement.
*1350 2. Legislative History and Statutory Policy
Nothing in nearly a century of U.S. trade law enactments is inconsistent with the Commission’s interpretation. The legislative history consistently evidences Congressional intent to vest the Commission with broad enforcement authority to remedy unfair trade acts. The United States Tariff Commission (“Tariff Commission”), the predecessor to the Commission, was established in 1916. Pub.L. No. 64-271, 39 Stat. 795 (1916). From its creation, a fundamental purpose of the Tariff Commission was to prevent a diverse array of unfair methods of competition in the importation of goods.[5] Recognizing the challenges posed by the wide array of unfair methods of competition, Congress emphasized the broad scope of the enforcement powers granted to the Tariff Commission when it passed the 1922 Tariff Act. With-respect to Section 316 of the 1922 Tariff Act, the precursor to Section 337, Congress explained that the “provision relating to unfair methods of competition in the importation of goods,” was “broad enough to prevent every type and form of unfair practice....” S.Rep. No. 67-595, at 3 (1922) (emphasis added).
In the Tariff Act of 1930, Congress superseded Section 316 with Section 337, but did not alter the Tariff Commission’s broad authority to address every type and form of unfair trade practice. See Pub.L. No. 71-361, 46 Stat. 590 (1930). Section 337 “provides broadly for action by the Tariff Commission in cases involving ‘unfair methods of competition and unfair acts in the importation of articles’ but does not define those terms nor set up a definite standard.” In re Von Clemm, 43 C.C.P.A. 56, 229 F.2d 441, 443 (1955). When Congress used the words “unfair methods of competition and unfair acts in the importation of articles,” that language is “broad and inclusive and should not be limited to, or by, technical definitions of those types of acts.” Id. at 444 (emphasis added).
For nearly 35 years, the Commission has embraced its Congressional grant as bestowing authority to investigate and take action under Section 337 based on induced infringement. At least as early as 1980, the Commission was making determinations that inducement to infringe a valid U.S. patent under 35 U.S.C. § 271(b) constituted an unfair trade act under Section 337 that could be remedied by an exclusion order. E.g., Certain Surveying Devices, Inv. No. 337-TA-68, USITC Pub. 1085 (July 1980) (Commission Determination). The Commission has persisted in its interpretation of Section 337 to the present day.[6] The Commission’s consistency supports the reasonableness of its interpreta *1351 tion. See, e.g., Astrue v. Capoto ex rel. B.N.C., — U.S. -, 132 S.Ct. 2021, 2033, 182 L.Ed.2d 887 (2012) (noting that agency’s reasonable interpretation was “adhered to without deviation for many decades”).
Congress has not upset the Commission’s consistent interpretation of Section 337. Indeed, Congress introduced the current statutory language in 1988, after the Commission had adopted this interpretation. See note 6, supra. Congress acted against a backdrop of consistent agency and judicial interpretation emphasizing the breadth of the Commission’s authority. See, e.g., Von Clemm, 229 F.2d at 443-44 (the Commission’s power to remedy acts of unfair competition is “broad and inclusive”); In re Orion Co., 22 C.C.P.A. 149, 71 F.2d 458, 467 (1934) (Section 337’s prohibition on “unfair methods of competition in the importation of goods is broad enough to prevent every type and form of unfair practice”) (quoting S.Rep. No. 67-595, at 3 (1922)). There is no indication that Congress, in 1988, meant to contract the Commission’s authority regarding patent infringement. To the contrary, Congress said it was expanding Commission authority.
Congress amended Section 337 in 1988, removing the requirement that a complainant must show injury to domestic industry before a violation is found. Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100-418, 102 Stat. 1107 (1988) (codified at Section 337(a)(2)-(3)). As a part of this effort, the 1988 Act inserted the phrase “articles that infringe.” Id. Congress declared its purpose to enhance Commission authority.[7] The “fundamental purpose” of the 1988 amendment was to “strengthen the effectiveness of section 337” against the “importation of articles which infringe U.S. intellectual property rights.” H.R.Rep. No. 100-40, pt. 1, at 155 (1987); see also H.R.Rep. No. 100-576, at 112 (1988) (Congressional finding that the amendments to Section 337 “make it a more effective remedy for the protection of United States intellectual property rights”). The Commission’s interpretation is consistent with Congress’ longstanding, broad policy, and with its broadening purpose in 1988.
This court has consistently affirmed the Commission’s determination that a violation of Section 337 may arise from an act of induced infringement. See, e.g., Young Eng’rs Inc. v. Int’l Trade Comm’n, 721 F.2d 1305 (Fed.Cir.1983) (affirming Section 337 violation based on contributory and induced infringement of process pat *1352 ents); Vizio, Inc. v. Int’l Trade Comm’n, 605 F.3d 1330 (Fed.Cir.2010) (affirming Section 337 violation based on induced infringement of 'method claim); Emcore Corp. v. Int’l Trade Comm’n, 449 Fed.Appx. 918 (Fed.Cir.2011) (affirming without opinion Section 337 violation based on induced infringement of apparatus claim). Prior to this case, none of our reviews of the Commission’s determinations have questioned the Commission’s authority to investigate and find a violation of Section 337 predicated on an act of induced infringement.
The technical interpretation adopted by the panel weakens the Commission’s overall ability to prevent unfair trade acts involving infringement of a U.S. patent. The panel’s interpretation of Section 337 would eliminate relief for a distinct unfair trade act and induced infringement. There is no basis for curtailing the Commission’s gap-filling authority in that way. Indeed, the practical consequence would be an open invitation to foreign entities (which might for various reasons not be subject to a district court injunction) to circumvent Section 337 by importing articles in a state requiring post-importation combination or modification before direct infringement could be shown.
The Commission reasonably determined that its interpretation would further the purpose of the statute. See Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 59, 131 S.Ct. 704, 178 L.Ed.2d 588 (2011) (purpose of a statute is relevant to Chevron Step Two). Congress enacted a legal regime for enforcement against unfair trade acts by directing the Commission to base Section 337 relief on goods and the issuance of exclusion orders to bar their importation. Absent unconstitutionality, we must defer to that regime. See, e.g., Beck v. Sec’y of Dep’t of Health & Human Servs., 924 F.2d 1029, 1034 (Fed.Cir.1991) (“Our duty is limited to interpreting the statute as it was enacted... .”). The Commission adopted a reasonable interpretation under it.
We note that our deference to the Commission’s statutory interpretation in this case is hardly momentous. The court has consistently deferred to the Commission, recognizing the Commission’s technical expertise in deciding issues arising under Section 337, a statute Congress has entrusted the agency to administer. E.g., Farrel Corp. v. Int’l Trade Comm’n, 949 F.2d 1147, 1151 (Fed.Cir.1991), superseded by statute, 19 U.S.C. § 1337(c); Enercon, 151 F.3d at 1381-83. We have concluded on several occasions that the court may not substitute its own interpretation of the statute for the agency’s reasonable interpretation. See, e.g., Wheatland Tube Co. v. United States, 495 F.3d 1355, 1360-61 (Fed.Cir.2007); Corning Glass Works v. Int’l Trade Comm’n, 799 F.2d 1559, 1565 (Fed.Cir.1986). We have routinely deferred to the agency’s reasonable interpretation of Section 337. See, e.g., Enercon, 151 F.3d at 1383 (affirming the Commission’s interpretation of the term “sale for importation” in Section 337 as reasonable); Kinik, 362 F.3d at 1363 (deferring to Commission’s interpretation of the interplay between Section 337 and 35 U.S.C. 271(g)); San Huan New Materials High Tech, Inc. v. Int’l Trade Comm’n, 161 F.3d 1347, 1357 (Fed.Cir.1998) (affirming Commission’s reasonable interpretation of § 337(f)(2)).
Conclusion
We hold that the Commission’s interpretation that the phrase “articles that infringe” covers goods that were used by an *1353 importer to directly infringe post-importation as a result of the seller’s inducement is reasonable. We remand the appeal to the original panel for further proceedings consistent with this opinion.

. Suprema separately imports scanners into the United States. Suprema displays these scanners at trade shows and uses them to obtain a certification under the United States *1342 Federal Bureau of Investigation's Integrated Fingerprint Identification standard. Supre-ma Answer at 13. Those importations are not relevant to the issue before us.

. A limited exclusion order is directed solely to Suprema imports and does not affect importations of scanning products manufactured by other foreign entities.

. The finding was based on confidential evidence that we do not publicly discuss.

. See, e.g., Brain Life, LLC v. Elekta Inc., 746 F.3d 1045, 1049, 1050-51, 1057, 1058, 1059 (Fed.Cir.2014); Power Integrations, Inc. v. Fairchild Semiconductor Int’l, Inc., 711 F.3d 1348, 1374 (Fed.Cir.2013); LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 65, 71, 78-79, 81 (Fed.Cir.2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1327-30 (Fed.Cir.2010); Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1309, 1320-23, 1336, 1338 (Fed.Cir.2009); Ricoh Co. v. Quanta Computer Inc., 550 F.3d 1325, 1337-42 (Fed.Cir.2008); DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1308-10 (Fed.Cir.2006); Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1365-66 (Fed.Cir.2003); RF Delaware, Inc. v. Pac. Keystone Technologies, Inc., 326 F.3d 1255, 1268 (Fed.Cir.2003); Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336, 1342 n. 2, 1343-44 (Fed.Cir.2001); Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 666-68 (Fed.Cir.1988).

. Unfair methods of competition have included dumping, subsidies, safeguards, anticém-petitive practices, and violations of intellectual property rights, all involving the cross-border movement of goods, i.e., articles. See, e.g., 42 Stat. 935-36, 943 (1922).

. See, e.g., Certain Inkjet Ink Cartridges with Print-heads and Components Thereof, Inv. No. 337-TA-723, USITC Pub. 4373 (Feb.2013),. 2011 WL 3489151, at *49 (June 10, 2011) (Initial Determination); Certain Semiconductor Chips Having Synchronous Dynamic Random Access Memory Controllers and Prods. Containing Same, Inv. No. 337-TA-661, USITC Pub. 4266 (Oct.2011), Initial Determination at 42, 2011 WL 6017982, at *85 (Jan. 22, 2010); Certain Automated Mechanical Transmission Sys. for Medium-Duty and Heavy-Duty Trucks and Components Thereof, Inv. No. 337-TA-503, USITC Pub. 3934 (Aug. 2007), Initial Determination at 154, 2007 WL 4473082, at *101 (Jan. 7, 2005); Certain Hardware Logic Emulation Systems and Components Thereof, Inv. No. 337-TA-383, USITC Pub. 3154 (Jan.1999), Comm'n Notice at 2 (Mar. 6, 1998), Initial Determination at 179, 1997 WL 665006, at *101 (July 31, 1997); *1351 Certain Molded-In Sandwich Panel Inserts and Methods for Their Installation, Inv. No. 337-TA-99, USITC Pub. 1246 (May 1982), Comm’n Op. at 8 (Apr. 9, 1982), aff'd sub nom., Young Eng’rs, Inc. v. Int’l Trade Comm’n, 721 F.2d 1305 (Fed.Cir.1983). We note that we provide, here, only a small portion of the Commission’s induced infringement determinations to show that they were made throughout the past 35 years. A more comprehensive list of the Commission’s induced infringement determinations under Section 337 can be found at Suprema, 742 F.3d at 1372 n. 2.

. "(a) FINDINGS. — The Congress finds that— (1) United States persons that rely on protection of intellectual property rights are among the most advanced and competitive in the world; and (2) the existing protection under section 337 of the Tariff Act of 1930 against unfair trade practices is cumbersome and costly and has not provided United States owners of intellectual property rights with adequate protection against foreign companies violating such rights.
(b) PURPOSE.- — The purpose of this part is to amend section 337 of the Tariff Act of 1930 to make it a more effective remedy for the protection of United States intellectual property rights.” § 1341, 102 Stat. 1211-1212.