NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CATERPILLAR PRODOTTI STRADALI S.R.L., CATERPILLAR AMERICAS C.V., CATERPILLAR PAVING PRODUCTS, INC., CATERPILLAR INC.,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**WIRTGEN AMERICA, INC.,**
*Intervenor*

-------------------------------------------------

**WIRTGEN AMERICA, INC.,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**CATERPILLAR PRODOTTI STRADALI S.R.L., CATERPILLAR AMERICAS C.V., CATERPILLAR PAVING PRODUCTS, INC., CATERPILLAR INC.,**
*Intervenors*

---

2019-2445, 2019-1911

————————————

Appeals from the United States International Trade Commission in Investigation No. 337-TA-1067.

————————————

Decided:  March 15, 2021

————————————

JAMES R. BARNEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for Caterpillar Prodotti Stradali S.R.L., Caterpillar Americas C.V., Caterpillar Paving Products, Inc., Caterpillar Inc. Also represented by DAVID MROZ.

MICHAEL LIBERMAN, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee.  Also represented by DOMINIC L. BIANCHI, WAYNE W. HERRINGTON.

MICHAEL E. JOFFRE, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for Wirtgen America, Inc. Also represented by PAUL ASHLEY AINSWORTH, DONALD BANOWIT, WILLIAM MILLIKEN, RALPH WILSON POWERS, III, DANIEL YONAN; MARK ANDREW KILGORE, RYAN D. LEVY, SETH R. OGDEN, WILLIAM E. SEKYI, JOHN FRANCIS TRIGGS, Patterson Intellectual Property Law, PC, Nashville, TN.

————————————

Before O'MALLEY, MAYER, and TARANTO, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* TARANTO.

Opinion concurring in the judgment filed by *Circuit Judge* O'MALLEY.

TARANTO, *Circuit Judge*.

Wirtgen America, Inc. filed a complaint against Caterpillar Products Stradali S.R.L., Caterpillar Americas C.V., Caterpillar Paving Products, Inc., and Caterpillar, Inc. (collectively, Caterpillar) with the International Trade Commission, alleging that Caterpillar's importation and sale of certain road-milling machines violated 19 U.S.C. § 1337 (section 337 of the Tariff Act of 1930). Specifically, invoking section 337's bar on importation and sale "of articles that . . . (i) infringe a valid and enforceable United States patent," 19 U.S.C. § 1337(a)(1)(B), Wirtgen alleged that Caterpillar infringed several of its patents, including U.S. Patent Nos. 9,656,530, 7,828,309, and 7,530,641. The Administrative Law Judge (ALJ) determined that Caterpillar violated section 337 with respect to the '530 and '309 patents. But the ALJ found no violation with respect to the '641 patent, concluding that Wirtgen had not shown the infringement alleged, *i.e.*, inducement by Caterpillar of direct infringement of method claims 11 and 17. Both determinations became those of the Commission when it declined to review them.

Caterpillar appeals as to the '530 and '309 patents, and Wirtgen cross-appeals as to the '641 patent. We affirm the Commission's decision as to the '530 and '309 patents. We reverse in part, vacate in part, and remand as to the '641 patent.

I

Based on Wirtgen's July 2017 complaint, the Commission instituted an investigation to decide whether Caterpillar was violating section 337 through infringement of five Wirtgen-owned patents: the '530 patent, the '309 patent, and the '641 patent, as well as U.S. Patent Nos. 9,624,628 and 9,644,340. Certain Road Milling Machines and Components Thereof; Institution of Investigation, 82 Fed. Reg. 40,595, 40,596 (Aug. 25, 2017) (notice). Only the '530, '309,

and '641 patents are now at issue.[1]  All three of those patents relate to road-milling machines, which are construction machines used to remove an existing road surface before installing a new one.  J.A. 20006–08.  They typically consist of a frame, four wheels or crawler tracks, and a milling drum, which scrapes off old pavement and clears the scraped material by means of a conveyor.  *Id.*

The '530 patent describes a "road construction machine" with wheels (or tracks) connected to the machine's frame "via lifting column[s]," each column being "vertically adjustable relative to the engine frame."  '530 patent, Abstract.  Wirtgen asserted that Caterpillar was infringing claims 2, 5, 16, and 23 of the '530 patent.  Caterpillar challenged all four claims as invalid for obviousness, *see* 35 U.S.C. § 103, and claims 2, 5, and 16 as invalid for indefiniteness, *see* 35 U.S.C. § 112.

The '309 patent describes a road-milling machine that allows for all four wheels (or tracks) to be "adjustable in height by means of an actuating member."  '309 patent, col. 1, lines 10–15.  Wirtgen asserted that Caterpillar was infringing claim 29.  Caterpillar alleged that claim 29 is invalid for obviousness.

The '641 patent describes an "automotive construction machine" with a milling drum, as well as a method for using the machine to mill ground surfaces.  '641 patent, col. 1, lines 7–8.  As relevant here, Wirtgen alleged that Caterpillar was inducing users of certain of its machines to use them in a way that constituted direct infringement of method claims 11 and 17 of the '641 patent.  *See* J.A. 3399–400.   Caterpillar  responded  that  no  act  of  direct

---

[1]  Wirtgen voluntarily dismissed its allegations as to the '628 patent, and the ALJ found no violation with respect to the '340 patent, a finding adopted by the Commission and not challenged on appeal.

infringement of those claims had occurred, so there could be no inducement liability.  *See* J.A. 2572, 2884.

The '641 patent states that, in prior-art milling machines, it was "necessary that the milling drum [be] idle" when the machine was "traveling backwards." '641 patent, col. 1, lines 31–32.  The drum spun in the opposite direction from the machine's forward-motion direction and rotated faster than the machine's wheels (or rotational devices for tracks); as a result, when the machine was moving in reverse (with the drum's rotation aligned with rather than opposing the direction of the machine's movement), "the construction machine may be accelerated suddenly and uncontrollably in case of an inadvertent engagement of the milling drum with the ground surface." *Id.*, col. 1, lines 33–36.  The '641 patent asserts that the necessary process of turning off the combustion engine while traveling in reverse and then waiting for it to return to speed before resuming milling was "very time-consuming and very annoying for the machine operator." *Id.*, col. 1, lines 55–59.  The '641 patent claims to improve on previous milling machines by providing that, when the drum's rotation and machine's motion are in the same direction, the drum is raised above the ground and continues to spin, but if sensors detect that it is too close to the ground, the drive engine is decoupled from the drum, or the wheels (or tracks) or the frame is raised, or an alarm goes off. *Id.* col. 1, line 64 through col. 2, line 11; *see also id.*, col. 3, lines 20–44; *id.*, col. 5, lines 32–46.

Claims 11 and 17 of the '641 patent, the only claims now at issue, are method claims.  Claim 11 recites:

11.  Method for working ground surfaces (2) with a construction machine (1) that is automotive by means of traveling devices (8) and in which a milling drum (12) supported in a machine frame (4) is driven by a drive engine (6),

> where the milling drum (12) is moved into a
> raised position when it is not in milling mode,
>
> characterized in that,
>
> the milling drum (12) remains coupled with the
> drive engine (6) when in raised position and
> with a direction of travel in which the rotating
> direction of the milling drum (12) corresponds
> to the rotating direction of the traveling devices
> (8),
>
> in that a distance is monitored between the ro-
> tating, raised milling drum (12) and the ground
> surface (2) or an obstacle located in front of the
> milling (12) when seen in the direction of
> travel, and
>
> in that the milling drum (12) is uncoupled from
> the drive engine (6), and/or the traveling de-
> vices (8) are uncoupled from the drive engine
> (6) and/or the machine frame (4) is raised
> and/or an alarm signal is generated when de-
> tecting that the deviation falls below a prede-
> termined distance between the milling drum
> (12) and the ground surface (2).

*Id.*, col. 8, lines 4–27. Claim 17 depends on claim 11 and
adds that the machine's "scraper blade" be "arranged be-
hind the milling drum" and be used as the sensing device.
*Id.*, col. 8, lines 64–67.

In its pre-hearing brief, Wirtgen asserted direct in-
fringement of claims 11 and 17 by Caterpillar customers'
use of Caterpillar's PM600, PM800, and PM300 Series ma-
chines—*i.e.*, all three Series. J.A. 20153. It then asserted:
"Caterpillar also indirectly infringes these claims by en-
couraging and facilitating others to perform actions using
those machines that *Caterpillar knows will infringe and
with the intent that performance of the actions will in-
fringe.*" J.A. 20153 (emphasis added). "For example,"

Wirtgen continued, "Caterpillar provides explicit instructions to its customers regarding the use of '[a]n automatic rotor disengagement feature,' which infringes at least the method claims—claims 11 and 17—of the '641 patent. CX-0006C Q416 (Meyer Opening [Witness Statement])." J.A. 20153 (citing J.A. 15520 (alteration in original)). Finally, Wirtgen said (with respect to two of the Series), "Caterpillar also distributes documentation in the United States outlining how to use the PM600 Series and PM800 Series machines in a manner that infringes the '641 patent." J.A. 20153 (citing evidence); *see also* J.A. 3399–400 (alleging the same in Wirtgen's post-hearing brief).

On the knowledge element of inducement, Wirtgen had obtained concessions by Caterpillar that Caterpillar knew about the '641 patent since at least June 15, 2017. *See* J.A. 17887–88 (Request for Admissions 1047, 1049). But Wirtgen did not cite those admissions in its pre- or post-hearing briefs in asserting Caterpillar's knowledge. Instead, as quoted just above, when directly asserting Caterpillar's knowledge of the patent and knowledge that the actions it was encouraging were infringing, Wirtgen simply cited a question and answer (Q416) in the written statement of its expert, Dr. John Meyer, submitted as part of Wirtgen's direct evidence. *See* J.A. 20153 (pre-hearing brief), 3400 (post-hearing brief). Notably, in responding to Wirtgen's induced-infringement allegations, Caterpillar never disputed Wirtgen's assertions that Caterpillar knew of the '641 patent and knew that its customers' use of its machines infringed claims 11 and 17. *See* J.A. 2572, 2884. Instead, it argued simply that there had been no act of direct infringement of the '641 patent by Caterpillar's customers in the United States and that there could be no induced infringement without such direct infringement. *Id.*

Wirtgen contended that Caterpillar's customers had committed acts of direct infringement of claims 11 and 17 in the United States—acts induced by Caterpillar—regarding all three Series. It is not disputed before us that

operation of the accused machines, when driven in reverse, comes within the claims and that at least one PM300 Series machine was imported into the United States. J.A. 96–100 (finding importation); J.A. 254–56 (finding coverage by claims when operated in particular way). The only direct-infringement issue before us is whether Wirtgen proved such use of the PM300 Series in the United States. On that issue, Wirtgen cited the testimony of Mr. Engelmann, a Caterpillar employee, J.A. 10733–35 (quoted in J.A. 253–54), and Dr. Alleyne, an expert for Caterpillar, J.A. 10862–66. *See* J.A. 3399–413 (post-hearing Wirtgen brief).

In October 2018, the ALJ issued his Final Initial Determination, which became the Commission's decision in the respects relevant on appeal. J.A. 76–521. The ALJ determined that Caterpillar violated section 337 with respect to the '530 and '309 patents. Specifically, the ALJ found that Caterpillar infringed claims 2, 5, 16, and 23 of the '530 patent and claim 29 of the '309 patent, and he rejected Caterpillar's invalidity assertions. J.A. 516, 518; *see also* J.A. 135–216 ('309 patent); J.A. 426–504 ('530 patent).

As to the '641 patent's claims 11 and 17, the ALJ found no infringement—that is, no induced infringement by Caterpillar—while rejecting Caterpillar's invalidity contentions. J.A. 516–17. The ALJ made two findings of significance. The first fully defeated Wirtgen's '641 patent infringement case, which was limited to inducement. Thus, the ALJ determined that Wirtgen "ha[d] not shown that Caterpillar knew of the '641 [p]atent and that Caterpillar knew that the actions it allegedly induced were infringing." J.A. 256. When making that determination of a failure of proof of Caterpillar's knowledge, the ALJ listed, as Wirtgen's evidence, the citations that Wirtgen had set forth in its post-hearing brief, with one notable exception: The ALJ made no mention of Wirtgen's citation to Dr. Meyer's testimony (J.A. 15520). J.A. 256 n.47 (quoting Wirtgen's string citations at J.A. 3400 following a sentence about PM600 and PM800 Series documentation, but

omitting Wirtgen's citation to "CX-00006C Q416 (Meyer Opening [Witness Statement])" following the preceding sentence at J.A. 20153).

The ALJ's second inducement-related finding adverse to Wirtgen was limited to one portion of the asserted direct infringement by customers underlying the inducement assertion. The ALJ found, favorably to Wirtgen, in reliance on Mr. Engelmann's testimony, that Caterpillar's customers had infringed claims 11 and 17 by operating the PM600 and PM800 Series machines in the United States. J.A. 254.[2] But the ALJ found, upon reviewing the relied-on testimony of Mr. Engelmann and Dr. Alleyne, that Wirtgen had not shown that Caterpillar's customers similarly used the PM300 Series in the United States. J.A. 254 & n.46.

The Commission declined to review the ALJ's determinations on these three patents, *see* Certain Road Milling Machines and Components Thereof Commission Determination to Review in Part a Final Initial Determination; Schedule for Filing Written Submissions on Remedy, the Public Interest, and Bonding, 84 Fed. Reg. 16,882, 16,883 (Apr. 23, 2019) (notice), and they became the final opinion of the Commission, *see* J.A. 1–42. Caterpillar timely appealed as to the '530 and the '309 patents, and Wirtgen timely cross-appealed as to the '641 patent. We have jurisdiction under 19 U.S.C. § 1337(c) and 28 U.S.C. § 1295(a)(6).

## II

"We review the Commission's final determinations under the standards of the Administrative Procedure Act."

---

[2]    It is undisputed here that Caterpillar's PM620 machine was representative of both the PM600 and PM800 Series products. *See* J.A. 234. The ALJ thus did not make separate factual findings with respect to the PM600 and PM800 Series.

*Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1359 (Fed. Cir. 2019); *see also* 19 U.S.C. § 1337(c); 5 U.S.C. § 706. The Commission's factual findings are reviewed for substantial evidence and its legal determinations are reviewed de novo. *Guangdong*, 936 F.3d at 1359. Infringement is a question of fact reviewed for substantial evidence. *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1367 (Fed. Cir. 2019). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding." *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330 (Fed. Cir. 2019).

We see no reversible error in the ALJ's decision (adopted by the Commission) with respect to the '530 and '309 patents. The ALJ's comprehensive and detailed findings as to those patents rest on substantial evidence, and we discern no prejudicial error of law in the rulings challenged in this court. We therefore discuss only Wirtgen's challenge to the two rulings regarding indirect infringement of claims 11 and 17 of the '641 patent.

A

Wirtgen first argues that the ALJ lacked substantial evidence to support his finding that Wirtgen had not shown that Caterpillar knew of the '641 patent and that Caterpillar knew and intended that its customers' use of the PM300, PM600, and PM800 Series machines infringed claims 11 and 17. Wirtgen Opening Br. at 55–63. We agree.

Induced infringement requires proof of two types of knowledge by the alleged inducer: knowledge of the patent in question and knowledge that the induced acts infringe the patent. *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920, 1926 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Here, the ALJ found that Wirtgen did not present evidence of the two types of relevant knowledge for induced infringement. J.A.

256. That determination, we conclude, is not supported by substantial evidence.

Wirtgen expressly alleged knowledge sufficient for induced infringement in its pre and post-hearing briefs, *see* J.A. 3400, 20153, and Caterpillar never disputed those allegations, *see* J.A. 2572, 2884. Indeed, Caterpillar had admitted that it knew about the '641 patent. *See* J.A. 17887–88 (Request for Admissions 1047, 1049). And Caterpillar did not dispute Wirtgen's assertions that it knew that its customers infringed the '641 patent. Nor did Caterpillar even assert that Wirtgen, while asserting such knowledge, had failed to cite evidence to prove it.

The ALJ nevertheless, *sua sponte*, found that Wirtgen had not proved its assertion of knowledge. Given the record cited to the ALJ by Wirtgen, and the absence of any contest on the point by Caterpillar, that was not a reasonable finding to make.

In its briefs before the ALJ, Wirtgen cited Q416 of Dr. Meyer's witness statement. *See* J.A. 3400, 20153 (both citing Q416 at J.A. 15520). The citation refers to the following colloquy with Dr. Meyer:

416. Q: Do you have any examples of such actions on behalf of Caterpillar?

A: Yes. For example, Caterpillar provides explicit instructions to its customers regarding the use of "[a]n automatic rotor disengagement feature," which infringes at least the method claims—claims 11 and 17—of the '641 patent.

J.A. 15520 (Q416 (alteration in original)). The language "such actions" by its plain meaning is a reference back to the actions identified in the immediately preceding question and answer, Q415. *See, e.g.*, *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 25 n.8 (1982) (noting that "such" refers back). And the Q415 characterization is explicit that the "actions" (to which Q416 is referring) were undertaken

by Caterpillar's customers with knowledge by Caterpillar that they would infringe the '641 patent:

> 415.  Q: What is your opinion as to whether Caterpillar indirectly infringes claims 1, 7, 11, and 17 of the '641 patent?
>
> A: Caterpillar has also indirectly infringed and continues to indirectly infringe claims 1, 7, 11, and 17 of at least the '641 patent by way of both induced infringement and contributory infringement.  Indeed, Caterpillar induced and continues to induce others to infringe claims 1, 7, 11, and 17 of the '641 patent by selling for importation into the United States, importing, and selling after importation the PM300 Series, PM600 Series, and PM800 Series machines and encouraging and facilitating others to perform *actions using those machines that Caterpillar knows will infringe and with the intent that performance of the actions will infringe.*  I have also been informed that Caterpillar's importation, sale for importation, and sale in the United States after importation of the PM300 Series, PM600 Series, and PM800 Series machines and components thereof, are continuing.

J.A. 15520 (Q415 (emphasis added)).

The only reasonable understanding of Q416, given its express "such actions" reference back to Q415, is that the examples given in Q416 are examples of customer actions that Caterpillar knew would infringe claims 11 and 17 of the '641 patent.  Caterpillar's failure to contest the point strongly confirms that this is the only reasonable meaning.  And the ALJ provided no basis for finding otherwise when he *sua sponte* found a failure of proof.  Indeed, as we have noted, the ALJ wholly overlooked this evidence.

We therefore must reverse the ALJ's finding, adopted by the Commission, that Wirtgen failed to prove the

knowledge required for inducement.  Caterpillar has not suggested an alternative basis for affirming the finding of no inducement.  Accordingly, we vacate the finding of no induced infringement.

## B

The ALJ found a second failure of proof as to inducement, but this finding does not undermine the rejection of inducement altogether.  It affects only inducement of infringing use of Caterpillar's PM300 Series machines, not inducement of infringing use of Caterpillar's PM600 and PM800 Series machines.  The ALJ found that Wirtgen had not shown use in the United States of any imported PM300 Series machine in a way that would infringe.  J.A. 254.  Wirtgen challenges that finding as unsupported by substantial evidence.  *See* Wirtgen Opening Br. at 67–75.

We reject this challenge.  In support of its assertion as to the PM300 Series, Wirtgen pointed the ALJ at most to certain testimony by Mr. Engelmann, J.A. 10733–35, and Dr. Alleyne, J.A. 10862–66.  The ALJ found, however, that while Mr. Engelmann testified about use of the PM600 machines, "Mr. Engelmann's testimony . . . does not concern the PM300 products," that Dr. Alleyne "testified about the PM600 and PM300 series products' capabilities, not their use in the United States," and that "Wirtgen [did] not cite to any additional testimony showing that a customer in the United States used a PM300 machine."  J.A. 253–54 & n.46.  Wirtgen has not shown that the ALJ was unreasonable in reading the testimony simply not to show the infringing use of the PM300 machine in the United States.  At oral argument, Wirtgen agreed that Mr. Engelmann was never specifically asked about the PM300 Series during the cited exchange, Oral Arg. at 7:03–7:15, and that it had not pointed the ALJ to other evidence showing that a direct act of infringement had occurred for the PM300 Series, *id.* at 25:06–25:25.  We therefore affirm the ALJ's

finding, adopted by the Commission, regarding the PM300 Series.

### III

For the foregoing reasons, the decision of the International Trade Commission is affirmed in part, reversed in part, and vacated in part, and the matter is remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED**

COSTS

The parties shall bear their own costs.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**CATERPILLAR PRODOTTI STRADALI S.R.L.,
CATERPILLAR AMERICAS C.V., CATERPILLAR
PAVING PRODUCTS, INC., CATERPILLAR INC.,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**WIRTGEN AMERICA, INC.,**
*Intervenor*

-------------------------------------------------

**WIRTGEN AMERICA, INC.,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**CATERPILLAR PRODOTTI STRADALI S.R.L.,
CATERPILLAR AMERICAS C.V., CATERPILLAR
PAVING PRODUCTS, INC., CATERPILLAR INC.,**
*Intervenors*

_____

2019-2445, 2019-1911

———————————

Appeals from the United States International Trade Commission in Investigation No. 337-TA-1067.

———————————

O'MALLEY, *Circuit Judge*, concurring in the judgment.

I agree with the majority's well-reasoned analysis affirming the International Trade Commission's ("Commission") decision as to the '530 and '309 patents.  I also agree in principle with the majority that substantial evidence does not support the Commission's finding of no induced infringement of the claimed methods of the '641 patent.  I write separately because, as I said in *Suprema*, I believe the Commission has no authority to bar products that are non-infringing at the date of importation and that will only become infringing if and when some future parties are induced to use the products in a way that infringes a method of use claim.  *Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338, 1354 (Fed. Cir. 2015) (en banc) (O'Malley, J., dissenting).

The Commission's authority to issue exclusion orders must be rooted in its enabling statute.  *See Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1355 (Fed. Cir. 2008).  The plain language of 19 U.S.C. § 1337 ties the Commission's authority to the importation, sale for importation, or sale within the United States after importation of "articles that—infringe" a valid United States patent.  *See* 19 U.S.C. § 1337(a)(1)(B)(i).  Thus, as I said in *Suprema*, the statute's focus is on whether the article in question directly infringes a valid United States patent at the time of importation.  *Suprema*, 796 F.3d at 1356–57 (O'Malley, J., dissenting).

The statute straightforwardly applies, for example, in the context of composition of matter claims, where direct infringement occurs upon importation of the article.  The

statute does not apply as straightforwardly, however, in the context of method of use claims because direct infringement of such claims typically occurs post-importation only if and when a customer uses the article to perform the steps of the claimed method.  Unlike the *Suprema* majority, I do not believe Section 1337 grants the Commission authority under an inducement theory of infringement to issue exclusionary orders for "articles that—infringe" method of use patents.  *See id.* at 1357 ("When the Commission attempts to enforce an exclusion order under § 1337(a)(1)(B)(i) on grounds that an importer or customer may later complete steps of a method claim post-importation, a necessary predicate of § 1337(a)(1)(B)(i) is missing—there are no 'articles that—infringe' because there is no infringement.") (O'Malley, J., dissenting).

As the majority discusses, Wirtgen's only theory of direct infringement of method claims 11 and 17 of the '641 patent involves a choice by Caterpillar's customers to operate the road milling machines in an infringing manner far from the point of importation.  *See* Maj. Op. at 7–9.  As we are bound by *Suprema,* I concur with the majority, but continue to believe that the Commission lacks the authority under Section 1337 to issue an exclusion order in these circumstances.